OPINION
{¶ 1} Richard K. Wilson is appealing from the grant of summary judgment against him and in favor of the plaintiff-appellees wherein the court found that Mr. Wilson's claim against the plaintiffs was not filed within the one year statute of limitation time and was therefore barred.
 {¶ 2} In its brief, which does not conform to the Appellate Rules, Mr. Wilson set forth no assignment of errors but essentially argued that the grant of summary judgment was wrong on the ground that material issues of fact remain to be tried.
 {¶ 3} Our review of the trial court's grant of summary judgment is de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105,1996-Ohio-336. That means we use the same standard that the trial court should have used and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial. Brewer v. Cleveland CitySchools Bd. Of Edn. (1997), 122 Ohio App.3d 378, 383. Since the standard the trial court used in granting summary judgment is set forth in full in its opinion, quoted hereinafter, we will not repeat that at this juncture. The facts and legal analysis the trial court used in granting summary judgment are set forth concisely but in full in its opinion and decision, which is as follows:
 {¶ 4} "This matter is before the Court on Plaintiffs Burdge Law Office Co., LPA and Ronald L. Burdges' (`Burdge') Renewed Motion for Summary judgment filed December 19, 2003. Defendant Richard K. Wilson (`Wilson') filed his memorandum contra Plaintiffs' Motion for Summary Judgment on January 12, 2004. Burdge filed his reply on January 21, 2004, and Wilson filed a response thereto on February 9, 2004. The Court had overruled by entry filed June 27, 2003 Burdge's previous motion for summary judgment. The chief reason the first motion was overruled was Burdge's failure to support the motion with evidence establishing the important dates of events referred to in the motion. That failure has been remedied by the attachment to Burdge's renewed motion of an affidavit of Ronald Burdge (Tab F and sub-tabs 1, 2, and 3 thereof), which establishes certain dates of events, which dates are not contested by Wilson.
 "I. FACTS {¶ 5} "On July 23, 1999, Burdge filed a complaint on behalf of Wilson for damages associated with an alleged odometer rollback violation. On September 5, 2000, arbitrators awarded Wilson $7,000.00 for the alleged offenses. Wilson moved the trial court to recover attorneys fees which he incurred in prosecuting his claims against an automobile dealer. On March 13, 2001 Magistrate Ballard issued a decision awarding Wilson $19,979.02 for litigation expenses and fees he incurred while prosecuting his claims. Magistrate Ballard's decision was appealed and by Order issued June 5, 2001, Judge Froelich reversed the magistrate's recommendation to award Burdge's attorney fees incurred by Wilson.
 {¶ 6} "On July 3, 2001, Burdge confirmed that his attorney-client relationship with Wilson had ended because Wilson retained new counsel to appeal the trial court's decision. The appellate court subsequently affirmed the trial court's decision denying Wilson's award of attorneys fees. On July 30, 2002, Burdge filed a complaint to recover his attorneys fees from Wilson. On August 15, 2002, Wilson filed counterclaims against Burdge alleging legal malpractice, breach of fiduciary duty/breach of contract, and sought punitive damages.
 {¶ 7} "II. SUMMARY JUDGMENT STANDARD {¶ 8} "Summary judgment is appropriate where: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327, Civ. R. 56(C). `The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting a summary judgment.' Harless v. Willis Day Warehousing Co.
(1978), 54 Ohio St.2d 64, 66. In considering a motion of summary judgment, a court is to look to the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been properly submitted to the court. Civ. R. 56(C). A court is required to consider all documents properly submitted, and `in its discretion, may consider other documents than those specified in Civ. R. 56(C) if there is no objection' by the other party. Biskupich v. Westbay Manor Nursing Home
(1986), 33 Ohio App.3d 220, 222.
 {¶ 9} "The moving party cannot discharge its initial burden simply by making a conclusory assertion that the non-moving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ. R. 56(C) which affirmatively demonstrates that the non-moving party has no evidence to support the non-moving party's claims. Drescher v. Burt (1996),75 Ohio St.3d 280, 293. In opposing a summary judgment motion, the non-moving party may not rest upon the mere allegations or denials of its pleadings, but must set forth specific facts showing there is a genuine issue for trial. Reynoldsburg Motor Sales, v. Columbus (1972),32 Ohio App.2d 271, 274.
 "III. LAW AND ANALYSIS {¶ 10} "The parties herein dispute whether Wilson's counterclaims for legal malpractice against Burdge are time barred. The applicable statute of limitation for a legal malpractice claim in Ohio is one year from the time the action accrues. See R.C. 2305.11(A). A claim for legal malpractice accrues when `there is a "cognizable event" whereby the client discovers or should have discovered that their injury was related to their attorney's act or non-act and the client is put on notice of a need to pursue possible remedies against the attorney, or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later.' Zimmie v. Calfee, Halter Griswold (1989), 43 Ohio St.3d 54, 538 N.E.2d 398. `In other words, the statute of limitation does not begin to run until the later of the following two events, viz: 1) the termination of the attorney-client relationship, or 2) the occurrence of a "cognizable event."' Wozniak v.Tonidandel (1997), 121 Ohio App.3d 221. In ruling on Burdge's motion, the court must consider and determine two underlying issues: (1) whether the attorney-client relationship terminated as early as July 3, 2001 and no later than July 5, 2001 and (b) whether the cognizable event occurred as early as June 12, 2001 and no later than July 3, 2001. Wilson asserts that there are genuine issues of material fact in dispute.
"1. Date of Termination of the Attorney-Client Relationship
 {¶ 11} "Burdge contends that according to Columbus Credit Co. V.Evan, (1992), 82 Ohio App, 3d 798, the attorney-client relationship is consensual and is subject to termination by acts of either party, and relies on Mastran v. Marks, (March 28, 1990), Summit County App. No. 14270, for the assertion that the termination of the attorney-client relationship depends, not on the subjective loss of confidence on the part of the client, but on conduct, an affirmative act by either the attorney or the client that signals the end of the relationship. Burdge argues that a letter can signify the end of the attorney client relationship and that retaining new counsel to proceed with the same claims signifies the termination of the attorney-client relationship. Burdge also argues that no further contact between the attorney and the client as well as no further charges on the client's account and no further representation all signify the termination of the attorney-client relationship.
 {¶ 12} "Regarding specific dates, Burdge contends that the attorney-client relationship here terminated as early as July 3, 2001, but no later than July 5, 2001; that on June 12, 2001 Burdge sent a letter to Wilson advising him of Judge Froelich's June 5, 2001 adverse ruling; that the letter advised Wilson of his right to file an appeal within 30 days of the decision; that the next time Burdge heard anything from Wilson was on July 5, 2001, when Burdge received a Notice of Appeal, which was filed on July 3, 2001, from Attorney Keith Brown, Wilson's new counsel; and that attorney Keith Brown was hired by Wilson to represent him in the same underlying case.
 {¶ 13} "Burdge further asserts that on July 5, 2001, in response to receiving the Notice of Appeal, Burdge sent a letter formally notifying Wilson and Attorney Brown of the termination of the attorney-client relationship between Burdge and Wilson; that the letter was mailed to Wilson as well as attorney Keith Brown on July 5, 2001; that the fact that Wilson retained new counsel to file the appeal on July 3, 2001 in the underlying case is the first event signifying the termination of the attorney-client relationship; that the termination of the relationship is further signified by the termination letter from Burdge to attorney Keith Brown and Wilson on July 5, 2001; that further evidence that the termination of the attorney-client relationship occurred on July 5, 2001 is that Burdge did not consult or assist attorney Keith Brown or Wilson with the appeal in any manner; that Burdge did not render any legal services to Wilson or make any charges to Wilson's account after July 5, 2001; and that there was no contact after July 5, 2001, other than the demand letters for settlement of the legal malpractice claims received from attorney Keith Brown.
 {¶ 14} "Wilson cites numerous cases which the court has reviewed. However, the court is not persuaded by Wilson's arguments. The Court finds that reasonable minds could only conclude that the attorney-client relationship terminated no later than July 5, 2001.
"2. Date of the Cognizable Event
 {¶ 15} "Burdge contends that according to Flowers v. Walker, (1992)63 Ohio St.3d 546, a cognizable event is an event sufficient to alert a reasonable person that a questionable legal practice may have occurred. Burdge asserts that a cognizable event can be found when there is an adverse ruling from the court, which is conveyed to the client and that the cognizable event can be signified by the hiring of a new attorney. Burdge argues that the cognizable event occurred as early as June 12, 2001, the date Burdge sent a letter to Wilson explaining the adverse ruling by Judge Froelich. That letter advised Wilson that no attorney's fees were awarded. Burdge argues that the date Defendant learned of Judge Froelich's adverse ruling is the date establishing the cognizable event.
 {¶ 16} "Burdge further contends that soon after the June 12, 2001 letter to Wilson, Wilson retained new counsel, Keith Brown, to represent Wilson in the appeal; that the exact date the Wilson retained Mr. Brown is unclear, however it is undisputable that he had at least retained him by July 3, 2001, the date on which the Notice of Appeal was filed; that Wilson was on notice of his potential legal malpractice claims against Burdge at the time of retaining new counsel, if not sooner, when Burdge advised Wilson of the adverse ruling on June 12, 2001.
 {¶ 17} "Again, Wilson cites numerous cases in his memorandum. The Court, however, is not persuaded by Wilson's arguments.
 {¶ 18} "Burdge's argument is well taken. The statute of limitations for legal malpractice begins to run on the date of the termination of the attorney-client relationship or the date of the occurrence of a cognizable event, whichever occurs later. Zimmie, supra. Wilson hired new counsel at some point between June 12, 2001 and July 3, 2001. The earliest cognizable event which made Wilson aware that a questionable legal practice had occurred was June 12, 2001. Wilson was aware of the adverse ruling by letter dated June 12, 2001 from Burdge. Furthermore, Wilson's new counsel, Mr. Brown, filed a Notice of Appeal on July 3, 2001. The Court finds that reasonable minds could only conclude that the cognizable event occurred no later than July 3, 2001.
 "IV. CONCLUSION {¶ 19} "Because the latest of the two events is July 5, 2001, the date of termination of the attorney-client relationship, the statute of limitations began to run on July 5, 2001 and the one year limitation period therefore ended on July 5, 2002. However, `In Ohio a counterclaim asserted by the defendant against the plaintiff, which relates to the same transaction or occurrence asserted in the original claim, relates back to the original commencement of the action.' Armstrong v. HarpRealty Co. (1991), 73 Ohio App. 3d 292, 294. Burdge's complaint was filed on July 30, 2002 Wilson's counterclaim is therefore considered filed on July 30, 2002 as well. Wilson's claim for legal malpractice was filed 27 days after the expiration of the statute of limitations and Wilson's claim is therefore barred."
 {¶ 20} "For the foregoing reasons, Burdge's motion for summary judgment on Wilson's counterclaim is hereby SUSTAINED."
 {¶ 21} We have carefully examined the record, including the evidence the plaintiffs/appellees presented to the trial court and we agree that there are no genuine issues existing for trial or any issues of fact yet to be determined. We hereby adopt the trial court's well reasoned decision in full as our own. Mr. Wilson's appeal is overruled and the judgment is affirmed.
Brogan, P.J., and Wolff, J., concur.
(Hon. Frederick N. Young, Retired from the Court of Appeals, Second Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio).